Hovhannes Bayburtski
CA Bar No. 348506
Vichi Law, PC
12400 Ventura Blvd, #411
Studio City, CA 91604
Telephone:(310)901-9112
Email: hovbaylaw@gmail.com; globallawusa@gmail.com
Attorney for Petitioner

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Xin LIN<br>Petitioner,<br>v.<br>James JANECHA, the Warden of the Adelanto ICE Processing Center;<br><br>Jaime RIOS, Field Office Director, Adelanto, Office of Detention and Removal, U.S. Immigrations and Customs Enforcement, U.S. Department of Homeland Security;<br><br>Todd M. LYONS, Acting Director, Immigration and Customs Enforcement, U. S. Department of Homeland Security;<br><br>Markwayne MULLIN, in the Official Capacity, Secretary, U.S. Department of Homeland Security; and<br><br>Todd BLANCHE, in the Official Capacity, Attorney General of the United States.<br>Respondents | NO.<br><br>**PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>Challenge to Unlawful Incarceration Under Color of Immigration Detention Statutes;<br><br>Request for Declaratory and Injunctive Relief<br><br>**IMMEDIATE RELEASE REQUESTED** |

## I. INTRODUCTION

1. Petitioner Xin Lin is a 29-year-old national of the People's Republic of China, a graduate of the University of Southern California, and a finance professional employed by an investment management firm in Santa Monica, California. She was inspected and lawfully admitted to the United States on a valid F-1 student visa, first on August 4, 2021 and most recently at Los

Angeles International Airport on August 11, 2022. She earned a Master of Science in Finance from USC. On April 29, 2022 she filed an application for asylum with U.S. Citizenship and Immigration Services, which remains pending to this day. USCIS granted her employment authorization, valid through April 15, 2030, and she has worked lawfully ever since. She has earned the Financial Risk Manager certification and completed Level II of the Chartered Financial Analyst program. She has no criminal history of any kind: DHS ran the federal criminal and law-enforcement databases on the day it arrested her, and both TECS and NCIC returned "Negative result." (Ex. 5 at 1–2; Ex. 2, Mot. at 3, 5, 8.)

2. On July 29, 2026, ICE officers arrested Ms. Lin at Los Angeles International Airport as she returned from a business trip her employer had sent her on. She was not arriving from abroad. She had flown a domestic route, from John F. Kennedy International Airport in New York to Los Angeles, after working out of her firm's New York office. She was given no notice, no hearing, and no review by any neutral decision-maker before her liberty was taken. She has been confined at the Adelanto ICE Processing Center ever since.

3. This was not a chance encounter. ICE's own Form I-213 states that officers "dressed in civilian clothes with agency issued badges conducted a targeted field operation at the Los Angeles International Airport, Terminal 2 … in an attempt to locate LIN, Xin," because "DHS systems showed that LIN … would be travelling from JFK to LAX on July 29, 2026." (Ex. 5 at 2 (emphasis added).) The same form lists four ICE officers as arresting agents. (Ex. 5 at 2.) Respondents selected Ms. Lin in advance, learned her itinerary in advance, and staged a plainclothes operation to meet her flight. Every minute of that planning was a minute in which they could have given her notice and a hearing. They gave her neither.

4. Respondents' own record refutes the ground on which Ms. Lin is being held. Under the heading "MITIGATING FACTORS," the Form I-213 prepared by the arresting Deportation Officer states, in the Government's own words: "LIN does not appear to be a flight risk and a threat to public safety." (Ex. 5 at 3.) That is an admission by the agency that seized her, recorded contemporaneously. And it was not a document Petitioner had to hunt for: DHS itself uploaded the Form I-213 to the Immigration Court on August 24, 2026 — two days before the bond hearing — where it was admitted into evidence as the Government's Exhibit 2. (Ex. 5.)

5. Twenty-eight days after the arrest, on August 26, 2026, Immigration Judge Steven Marcus denied Ms. Lin bond on a pre-printed checkbox form. Its entire substantive reasoning is one sentence: "Flight risk which no amount of bond, even if coupled with alternatives to detention, is sufficient to mitigate significant likelihood of absconding." (Ex. 2, Order at 1.) The Government's own arresting officer wrote that she is not a flight risk. The Immigration Judge found that she is a flight risk so extreme that no bond and no alternative to detention could contain it. The order does not acknowledge the contradiction, because the order does not acknowledge the record at all.

6. It could not have, because those twenty-three words were not written for Ms. Lin. Exhibit 3 collects seven bond denial orders entered by this same Immigration Judge at the same court. Six of them — every order in the compendium entered on or after July 24, 2026 — contain that identical sentence, word for word, together with the identical pre-printed assurance that "[t]he Court conducted an individualized bond and custody redetermination hearing." Ms. Lin's order is the seventh in that sequence. Two of the six issued on the same day, August 21, 2026, to two unrelated respondents represented by two different attorneys; those two orders are identical to each other and to hers. (Ex. 3, Tabs 3-A, 3-G.) Eight respondents, seven different attorneys of record, nothing in common but twenty-three words. A finding that does not vary when the facts vary is not a finding about the facts.

7. Ms. Lin was arrested in the interior of the United States, at the end of a domestic flight, nearly five years after she was first lawfully admitted and nearly four years after her most recent admission. She never departed the United States in connection with this trip and never presented herself at any port of entry seeking admission. She is not an "arriving alien" or an applicant for admission under 8 U.S.C. § 1225. DHS charged her as a deportable alien under INA § 237(a)(1)(B), and the Immigration Judge's own order identifies the governing authority as "INA section 236(a)." (Ex. 5 at 3; Ex. 2, Order at 1–2.) Her detention is discretionary under 8 U.S.C. § 1226(a). See *Rodriguez Vazquez v. Bostock*, No. 25-6842, 2026 WL 2196424, at *3 (9th Cir. July 30, 2026).*

8. "[A]bsent the necessity of quick action by the [Government] or the impracticality of providing any pre-deprivation process, a post-deprivation hearing would be constitutionally inadequate." *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982) (citation and quotation marks omitted). And the bond hearing Ms. Lin later received did not cure the violation, because it

could not. "[A] post-detention bond hearing is insufficient to cure a violation of procedural due process arising from detention without a pre-deprivation hearing," and "the appropriate remedy for the deprivation is release from custody." *Mikayelyan v. Giles*, No. 5:26-cv-01035-SSS-DFM, Dkt. No. 19, at 3–4 (C.D. Cal. May 20, 2026); *Zaitsev v. Warden, Adelanto*, 2026 WL 1047942, at *7 (C.D. Cal. Apr. 15, 2026). Such a hearing "cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."* E.A.T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025).*

9. Petitioner does not ask this Court to order another bond hearing, and does not consent to one in lieu of release. She asks this Court to issue the writ and order her immediate release on reasonable conditions of supervision, and to bar Respondents from re-detaining her absent notice and a constitutionally adequate pre-deprivation hearing before a neutral adjudicator.

## II. JURISDICTION

10. This Court has subject-matter jurisdiction under 28 U.S.C. § 2241 (habeas corpus); U.S. Const. art. I, § 9, cl. 2 (the Suspension Clause); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1651 (the All Writs Act); and 28 U.S.C. §§ 2201–2202 (Declaratory Judgment Act). Petitioner is "in custody under or by color of the authority of the United States" and "in custody in violation of the Constitution or laws … of the United States." 28 U.S.C. § 2241(c)(1), (c)(3).

11. Federal courts retain jurisdiction under § 2241 to review the constitutionality of immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 516–17 (2003); *INS v. St. Cyr*, 533 U.S. 289, 305 (2001). "[T]he writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004). This Petition challenges only the lawfulness of Petitioner's custody. It does not challenge a final order of removal — none exists. The Executive Office for Immigration Review's own Automated Case Information system, queried on August 27, 2026, reports that "This case is pending," that "No appeal was received for this case," and that Petitioner's next master hearing before Immigration Judge Marcus is set for August 28, 2026 at 8:00 a.m. (Ex. 1.) The jurisdiction-channeling provisions of 8 U.S.C. § 1252 therefore do not bar this action. See *Jennings v. Rodriguez*, 583 U.S. 281, 294–95 (2018).

12. Title 8 U.S.C. § 1226(e) does not withdraw jurisdiction over the claims pleaded here. Section 1226(e) removes review of the Attorney General's discretionary judgment regarding detention or release; it "does not preclude challenges [to] the statutory framework that permits [the alien's] detention without bail." *Jennings*, 583 U.S. at 295 (quoting *Demore*, 538 U.S. at 517). Petitioner does not ask this Court to reweigh discretion. She challenges the procedures: the absence of any pre-deprivation process, the absence of any individualized assessment, the failure to place the burden on the Government, the failure to consider ability to pay or alternatives to detention, and the absence of a neutral adjudicator.

13. The Ninth Circuit has resolved the point. *Martinez v. Clark* holds that § 1226(e) "restricts jurisdiction only with respect to the executive's exercise of discretion but that discretionary judgment does not include constitutional claims or questions of law," and that whether a noncitizen is a flight risk or a danger "is a mixed question of law and fact and is reviewable as a 'question of law.'" 124 F.4th 775, 779, 781–82 (9th Cir. 2024); accord *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011); *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057–58 (9th Cir. 2008).

14. The Court is directed to grant the writ or issue an order to show cause "forthwith," 28 U.S.C. § 2243, and to give habeas petitions "special, preferential consideration to ensure expeditious hearing and determination." *Yong v. INS*, 208 F.3d 1116, 1120 (9th Cir. 2000). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and … the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

## III. VENUE

15. Venue is proper in this district. A habeas petition challenging present physical confinement must be filed in the district of confinement and name the petitioner's immediate custodian. *Rumsfeld v. Padilla*, 542 U.S. 426, 442–47 (2004). Petitioner is detained at the Adelanto ICE Processing Center in San Bernardino County, which lies within the Central District of California. 28 U.S.C. §§ 84(c), 2241(a).

## IV. PARTIES

16. Petitioner Xin Lin is a native and citizen of the People's Republic of China, born July 19, 1997. She is detained at the Adelanto ICE Processing Center, 10250 Rancho Road, Adelanto, CA 92301, under A# 240-788-800. (Ex. 5 at 1.)

17. Respondent James Janecha is the Warden of the Adelanto ICE Processing Center and is Petitioner's immediate custodian, with day-to-day control over the facility where she is confined. *Padilla*, 542 U.S. at 435.

18. Respondent Jaime Rios is the Field Office Director of the ICE Los Angeles Field Office, Enforcement and Removal Operations, and is the ICE official with authority over Petitioner's detention and custody determinations. He is sued in his official capacity.

19. Respondent Todd M. Lyons is the Acting Director of U.S. Immigration and Customs Enforcement and is sued in his official capacity.

20. Respondent Markwayne Mullin is the Secretary of Homeland Security and is sued in his official capacity. DHS encompasses ICE and is charged with administering and enforcing the immigration laws. See 8 U.S.C. § 1103(a).

21. Respondent Todd Blanche is the Attorney General of the United States and is sued in his official capacity. The Attorney General has authority over the immigration courts and the Board of Immigration Appeals through the Executive Office for Immigration Review.

## V. EXHAUSTION OF ADMINISTRATIVE REMEDIES

22. No statutory exhaustion requirement applies to a § 2241 petition challenging the constitutionality of immigration detention, and judicially created exhaustion is prudential, not jurisdictional. *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). Exhaustion may be excused where administrative remedies are inadequate or not efficacious, pursuit would be futile, irreparable injury will result, or the proceedings would be void. *Id.* (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)).

23. Each ground applies. The constitutional injury Petitioner alleges — deprivation of liberty without pre-deprivation process — is one the immigration courts have no jurisdiction to adjudicate and no power to remedy. "[N]either the Immigration Judge nor this Board may rule on the constitutionality of the statutes that we administer." *In re Rodriguez-Carrillo*, 22 I. & N. Dec.

1031, 1035 (BIA 1999); see also *Sola v. Holder*, 720 F.3d 1134, 1135 (9th Cir. 2013) ("Constitutional claims are generally excepted from the exhaustion requirement."). Exhaustion is excused where "an administrative remedy may be inadequate because of some doubt as to whether the agency was empowered to grant effective relief." *McCarthy v. Madigan*, 503 U.S. 140, 147 (1992).

24. An appeal to the Board would also be futile and would compound the injury. The only relief the agency can offer is another custody redetermination — that is, more of the after-the-fact process that the case law holds insufficient to cure this injury. See *Zaitsev*, 2026 WL 1047942, at *7;* Zepeda Perez v. Santacruz*, 2026 WL 980492, at* 5 (C.D. Cal. Apr. 9, 2026). And as Exhibit 3 shows, the deficiency here is not one adjudicator's isolated error in one case; it is a pattern spanning at least eight respondents. Directing Ms. Lin back into the channel that produced the pattern is not a remedy; it is a delay. A Board appeal takes months she does not have; her notice of appeal is not even due until September 24, 2026, and EOIR's docket confirms that no appeal has yet been received. (Ex. 2, Order at 2; Ex. 1.) The Ninth Circuit excuses exhaustion where "requiring it would cause prejudice due to an unreasonable delay." *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003). Ms. Lin has been detained since July 29, 2026. Every additional day is a separate irreparable injury that no later administrative decision can undo.

## VI. THE EVIDENCE SUBMITTED WITH THIS PETITION

25. Petitioner submits five exhibits. Every material factual allegation below is drawn from them, and the great majority is drawn from documents the Government itself created, filed, or signed.

Exhibit 1 — Executive Office for Immigration Review, Automated Case Information, *In re Lin, Xin*, A# 240-788-800, printed August 27, 2026: case pending, no BIA appeal received, next master hearing August 28, 2026 at 8:00 a.m. before Immigration Judge Steven Marcus.

Exhibit 2 — The custody record. It contains (i) the Order of the Immigration Judge denying custody redetermination, entered August 26, 2026 (Marcus, IJ), cited herein as "Ex. 2, Order"; and (ii) Respondent's Motion for Custody Redetermination, filed with the Adelanto Immigration Court on August 12, 2026 and admitted in the custody

proceeding as Immigration Court Exhibit 1, cited herein as "Ex. 2, Mot." and paginated to the motion's own pages. The motion was filed with supporting exhibits — the sworn declaration of Haig Mark Maghakian, his United States passport and California driver's license, the employment verification letter of Glendon Capital Management L.P., Petitioner's 2025 Form W-2, her most recent pay stub, her Employment Authorization Document, and her Form I-589 receipt notice — which are part of the immigration court record and which Petitioner will lodge in full upon the Court's request.

Exhibit 3 — Compendium of bond denial orders issued by Immigration Judge Steven Marcus at the Adelanto Immigration Court, Tabs 3-A through 3-G, with an index summarizing each order's respondent, A-number, date, counsel of record, and stated reason for denial.

Exhibit 4 — U.S. Citizenship and Immigration Services Form I-797C, Notice of Action, Receipt No. ZLA2251910740, dated August 5, 2022, acknowledging receipt of Petitioner's Form I-589 Application for Asylum and for Withholding of Removal.

Exhibit 5 — U.S. Department of Homeland Security Form I-213, Record of Deportable/Inadmissible Alien, with Form I-831 continuation pages, prepared July 29, 2026 by Deportation Officer Frontiera (W16233), uploaded by DHS to the Adelanto Immigration Court on August 24, 2026 and admitted in the custody proceeding as Immigration Court Exhibit 2. Cited to the form's own page numbers.

## VII. STATEMENT OF FACTS

### A. Lawful Admission, Graduate Study at USC, Pending Asylum Application, and Lawful Employment.

26. Petitioner is a native and citizen of the People's Republic of China, born July 19, 1997. She was inspected and lawfully admitted to the United States at Los Angeles International Airport on a valid F-1 nonimmigrant student visa, first on August 4, 2021. (Ex. 2, Mot. at 3, 5.) DHS's own Form I-213 records her most recent admission at LAX on August 11, 2022 as an "F1-Student," under SEVIS No. N0031719091 and Form I-94 No. 001566465A3, "with authorization to

remain in the United States for duration of status." (Ex. 5 at 1, 3.) She did not enter without inspection. The Form I-213 leaves the field "Length of Time Illegally in U.S." blank.

27. Petitioner came to the United States to study, and she did. She enrolled at the University of Southern California and completed a Master of Science in Finance. (Ex. 2, Mot. at 3, 5.)

28. On April 29, 2022, Petitioner filed a Form I-589 Application for Asylum and for Withholding of Removal with USCIS. DHS's own Form I-213 records the filing: "On April, 29, 2022, LIN filed an Application for Asylum and for Withholding of Removal, Form I-589, with U.S. Citizenship and Immigration Services (USCIS)." (Ex. 5 at 3.) USCIS issued Form I-797C, Notice of Action, Receipt No. ZLA2251910740, dated August 5, 2022, acknowledging that her "complete Form I-589 Application for Asylum and Withholding of Removal was received and is pending." (Ex. 4.) The Form I-213 confirms, under the heading "MITIGATING FACTORS," that "LIN has a pending I-589 with USCIS." (Ex. 5 at 3.) That application remains pending today — more than four years — and has never been denied, withdrawn, or found frivolous. Petitioner has complied with every immigration requirement while awaiting an interview she has never been given. (Ex. 2, Mot. at 3, 9.)

29. Petitioner has a fixed address. USCIS has corresponded with her at 700 West 9th Street, Apartment 2909, Los Angeles, California 90015 since 2022, and that is the established residence to which she will return if she is released. (Ex. 4; Ex. 2, Mot. at 5.) She also holds a valid United States driver's license, No. Y1706867, which DHS recorded on the Form I-213 the day it arrested her. (Ex. 5 at 3.)

30. On the strength of that pending application, USCIS granted Petitioner employment authorization, under which she has worked lawfully ever since. (Ex. 2, Mot. at 3, 5, 8.) Her Employment Authorization Document is valid through April 15, 2030.

31. Since November 2025, Petitioner has been employed full-time as a Fund Operations Associate with Glendon Capital Management L.P., an investment management firm specializing in distressed credit, special situations, and fixed-income investments, earning approximately $45 per hour. She is entrusted with investment operations, trade settlements, portfolio reconciliation, fund administration, operational controls, and regulatory compliance in support of institutional

investment funds managing billions of dollars in assets. (Ex. 2, Mot. at 3, 5, 8, 9.) Her employment is further documented by an employment verification letter, her 2025 Form W-2, and her most recent pay stub, filed with the motion below.

32. Petitioner has earned the internationally recognized Financial Risk Manager certification and has successfully completed Level II of the Chartered Financial Analyst program, credentials the motion below describes as "reflecting her exceptional professionalism, integrity, and long-term commitment to the financial services industry." (Ex. 2, Mot. at 3, 5, 9.)

33. Haig Mark Maghakian, the Chief Operating Officer of Glendon Capital Management L.P. and a United States citizen, submitted a declaration under penalty of perjury in support of Petitioner's release, "confirming Respondent's outstanding work performance, professionalism, reliability, and integrity" and "confirm[ing] that Respondent is a valued member of the firm's operations team and that the company intends to retain her employment upon her release." (Ex. 2, Mot. at 3; see also *id.* at 8, 9.) He has attested that he has no reason to believe that Petitioner poses any danger to the community or would fail to comply with any future immigration proceedings, that he is willing to continue supporting her throughout these proceedings, and that he is confident she will comply with every condition imposed and will appear at every future hearing. (Decl. of Haig Mark Maghakian ¶¶ 7, 10–12, filed with Ex. 2, Mot.)

34. Petitioner has no criminal convictions, no history of violence, no history of substance abuse, and no record of failing to appear before any court or government agency, in the United States or anywhere else. (Ex. 2, Mot. at 3, 5, 8, 9.) Respondents' own records confirm it. On the day of the arrest DHS ran five federal databases and recorded the results on the Form I-213: "CIS checked on 07/29/2026 with Positive result. EARM checked on 07/29/2026 with Negative result. TECS checked on 07/29/2026 with Negative result. NCIC checked on 07/29/2026 with Negative result. IAFIS checked on 07/29/2026 with Positive result." (Ex. 5 at 2.) TECS and NCIC — the federal law-enforcement and criminal-history databases — both came back negative. On the face of the form, the field "Immigration Record" reads "NEGATIVE," the field "Criminal Record" is blank, and the field "Number and Nationality of Minor Children" reads "None." (Ex. 5 at 1.) She had never been detained before July 29, 2026.

**B. Respondents Ran a Targeted Plainclothes Operation to Seize Petitioner Off a Domestic Business Flight — Without Notice, Without a Judicial Warrant, and Without Any Hearing.**

35. In late July 2026, Petitioner traveled to New York on business for her employer and worked temporarily out of the firm's New York office. On July 29, 2026, she flew home to Los Angeles on a domestic flight from John F. Kennedy International Airport. She had not left the United States. She was not seeking admission. She was flying from one American city to another, on a trip her employer had sent her on. (Ex. 5 at 2; Ex. 2, Mot. at 4, 5.)

36. Respondents knew she would be on that flight, and planned around it. ICE's Form I-213 states: "On July 29, 2026, at approximately 0900 hours, Immigration and Customs Enforcement (ICE) Officers dressed in civilian clothes with agency issued badges conducted a targeted field operation at the Los Angeles International Airport, Terminal 2 … in an attempt to locate LIN, Xin. DHS systems showed that LIN was a biographic match to an alien who had overstayed her previous admission and would be travelling from JFK to LAX on July 29, 2026." (Ex. 5 at 2.)

37. That paragraph forecloses any claim of exigency. Respondents identified Petitioner by name from their own databases, learned her itinerary before she boarded, assembled a plainclothes team — the Form I-213 names four arresting agents — and deployed it to a specific airport terminal to wait for her. This was a planned operation executed on a schedule Respondents themselves set. Providing notice and an opportunity to be heard before the arrest was not merely practicable; it was easier than what Respondents actually did.

38. At approximately 11:06 a.m., officers approached Petitioner "in a public space" in the terminal, "advised the female that they were Officers with Immigration and Customs Enforcement," and "asked the subject her name in which she said LIN, Xin." She gave her true name. She was the subject of the operation. Officers then placed her under arrest and transported her to the ICE Los Angeles Field Office "without incident." She "fully cooperated with immigration officials throughout the encounter." The arrest was effected without a judicial warrant, without prior notice, and without a hearing. No judge, no magistrate, and no Immigration Judge — no neutral decision-maker of any kind — reviewed the decision to deprive her of her liberty before it was taken. (Ex. 5 at 2; Ex. 2, Mot. at 4, 5.)

39. Respondents recorded the encounter. The Form I-213 states under "Body Worn Camera (BWC) Information" that "BWC footage was recorded for this enforcement activity." (Ex. 5 at 1.) Petitioner requests that the Court order Respondents to preserve and produce that footage. It is the only contemporaneous record of what Petitioner actually said and did at the moment of her

seizure, and the officer's paraphrase in the Form I-213 — that she "stated that she was a citizen of CHINA who is residing in the United States illegally without proper documentation" — is squarely contradicted by the USCIS-issued Employment Authorization Document she held at the time and by the asylum application the same form acknowledges is pending.

40. DHS served Petitioner with a Form I-862 Notice to Appear charging her as deportable under INA § 237(a)(1)(B). The Form I-213 records the disposition in the Government's own words: "ERO Los Angeles issued LIN a Notice to Appear, Form I-862, pursuant to Section 237(a)(1)(B) of the Immigration and Nationality Act (INA) … LIN will remain in ICE custody pending her immigration proceedings." (Ex. 5 at 3.) That charge is an admission by the Government that Petitioner was admitted: a charge under § 237 lies only against a noncitizen who has been admitted, while applicants for admission are charged under § 212. Petitioner is accordingly not an arriving alien and is not subject to mandatory detention. Her detention is discretionary under 8 U.S.C. § 1226(a) — as the Immigration Judge's own order confirms, identifying the governing authority as "INA section 236(a)." (Ex. 2, Order at 1–2.)

41. Petitioner was transported to the Adelanto ICE Processing Center, where she has remained in continuous custody since July 29, 2026.

**C. Respondents' Own Arrest Record States That Petitioner Is Not a Flight Risk — and Respondents Put It Before the Immigration Judge Themselves.**

42. The Form I-213 that ICE prepared on the day of the arrest contains a section headed "MITIGATING FACTORS." It states, in the Government's own words: "LIN does not appear to be a flight risk and a threat to public safety." It further states that "LIN has no ties to gangs"; that "LIN has a pending I-589 with USCIS"; that "LIN has no known serious mental, medical, or physical condition"; that "LIN does not have an immediate relative who is serving or has served in the U.S. military"; that "LIN is not the primary caretaker" of any dependent; and that "LIN has no significant country conditions that require consideration prior to effecting removal." (Ex. 5 at 3.)

43. This was Respondents' own filing. DHS uploaded the Form I-213 to the Adelanto Immigration Court on August 24, 2026 at 9:16 a.m. — two days before the bond hearing — and the court admitted it into evidence as the Government's Exhibit 2 in the custody proceeding. (Ex. 5.) Petitioner's motion had been filed twelve days earlier, on August 12, 2026, and was admitted as

Exhibit 1. (Ex. 2, Mot.) Both exhibits were in evidence before Immigration Judge Marcus when he signed the August 26, 2026 order. There is no question whether he had the Government's statement; the Government handed it to him.

44. That statement is an admission by the party that seized her. It was recorded contemporaneously by the arresting Deportation Officer, in a form the agency prepares for its own use, and it cuts directly against the position DHS now takes. Statements of that character are entitled to weight precisely because no litigant makes them for advantage.

45. Nothing changed between July 29, 2026 and August 26, 2026 that could bear on flight risk — except that Petitioner was locked up. Respondents have never identified any evidence that she is a flight risk. They could not have identified it to the Immigration Judge, because the order identifies no evidence at all.

46. Three further recitals on the same form warrant a word. The form states that "LIN expresses no fear of being returned to CHINA" — a checkbox recital flatly contradicted by the Form I-589 the same form acknowledges she has had pending since 2022, and by four years of prosecuting it. It states that "LIN has no known ties to the community precluding appropriate law enforcement action," a sentence that says nothing about the ties she has. And it lists her "Type of Employment" as "Unemployed or Retired," with the "Salary" field left blank — contradicted by her employment verification letter, her 2025 Form W-2, her pay stub, and a sworn declaration from her firm's Chief Operating Officer. That these recitals are pre-printed rather than observed is confirmed on the face of the document: the narrative describing Ms. Lin states that "LIN failed to maintain or comply with the conditions of the nonimmigrant status under which *he* was admitted." (Ex. 5 at 1, 3 (emphasis added).) Where the form's boilerplate conflicts with the documentary record, the documents govern. Its admission against the Government's own interest does not.

**D. Removal Proceedings and the August 26, 2026 Bond Denial.**

47. Petitioner is in removal proceedings before the Immigration Court at 10250 Rancho Road, Suite 201A, Adelanto, California. Her case is pending; no decision has issued on the merits, no appeal from any merits decision is on file, and no final order of removal exists. EOIR's Automated Case Information system so states as of August 27, 2026, and further shows that her next master hearing is set for August 28, 2026 at 8:00 a.m., internet-based, before Immigration Judge

Steven Marcus. (Ex. 1.) That hearing is tomorrow. She intends to appear at it, as she has appeared at every proceeding, and to continue prosecuting her asylum claim.

48. On August 12, 2026, Petitioner, through immigration counsel Nanduo Lu, filed a Motion for Custody Redetermination supported by documentary exhibits: the sworn declaration of her employer's Chief Operating Officer, that officer's United States passport and California driver's license, her employment verification letter, her 2025 Form W-2, her most recent pay stub, her Employment Authorization Document, and her pending Form I-589 receipt notice. The filing was admitted as Immigration Court Exhibit 1. (Ex. 2, Mot.)

49. On August 26, 2026, Immigration Judge Steven Marcus denied bond in its entirety. (Ex. 2, Order.) The order is a pre-printed checkbox form. Its entire substantive reasoning is one sentence: "Flight risk which no amount of bond, even if coupled with alternatives to detention, is sufficient to mitigate significant likelihood of absconding."

50. Everything else on the order is language printed on the form itself — a recitation that "[t]he Court conducted an individualized bond and custody redetermination hearing in this matter," that it "considered all arguments and evidence presented from both sides," and that it "orally articulated its findings" into the Digital Audio Recording system. The order makes no factual findings. It cites no evidence. It does not identify what, if anything, DHS presented. It states no bond amount. It names no alternative to detention. It does not mention Petitioner's lawful admission, her USC graduate degree, her four-year pending asylum application, her employment authorization, her documented earnings, her fixed address, her employer's sworn declaration, her professional certifications, her complete absence of any criminal history — or DHS's own written statement, in the Government's own admitted exhibit, that she "does not appear to be a flight risk." (Ex. 2, Order at 1.)

51. Petitioner reserved appeal; DHS waived it. Her notice of appeal to the Board is not due until September 24, 2026, and a Board appeal would take months to decide. (Ex. 2, Order at 2.) EOIR's docket confirms that no appeal has been received. (Ex. 1.) She remains detained at Adelanto today.

**E. The Same Immigration Judge Issued the Same Sentence to Eight Different People.**

52. The clearest evidence that a decision was not individualized is that the identical decision issued to someone else. Petitioner need not argue the point; she attaches the orders. Exhibit 3 is a compendium of bond denial orders entered by Immigration Judge Steven Marcus at the Adelanto Immigration Court, each reproduced in full behind its own tab, with an index page summarizing the seven:

53. Tab 3-A: *In re Wei, Ying*, A# 236-066-350, August 21, 2026 (counsel Zhigeng Fu, Diamond Bar). Tab 3-B: *In re Tong, Li*, A# 213-615-073, June 12, 2026 (counsel Zhigeng Fu, Diamond Bar). Tab 3-C: *In re Zhou, Chunwei*, A# 235-522-191, July 24, 2026 (counsel Junmei Wu, Pasadena). Tab 3-D: *In re Tu, Qing*, A# 246-481-887, July 31, 2026 (counsel Jiawei Peng, San Jose). Tab 3-E: *In re Ma, Lingjun*, A# 242-409-224, August 11, 2026 (counsel Yunchao Song, City of Industry). Tab 3-F: *In re Munkhbat, Urtnasan*, A# 235-489-021, August 14, 2026 (counsel Jeannie Joung, Los Angeles). Tab 3-G: *In re Xiong, Shimei*, A# 242-302-943, August 21, 2026 (counsel Yue Alan Zhang, Monterey Park).

54. Six of those seven — Tabs 3-A and 3-C through 3-G, every order in the compendium entered on or after July 24, 2026 — are word-for-word identical in every respect that matters: the same one-sentence flight-risk finding, followed by the same pre-printed paragraphs reciting that the hearing was "individualized," that all arguments and evidence were "considered," and that findings were "orally articulated" into the DAR system. Not one identifies any evidence, makes a finding of fact, states a bond amount, or names an alternative to detention. Each is signed "MARCUS, STEVEN."

55. Ms. Lin's order, entered August 26, 2026, is the seventh in that sequence and is word-for-word identical to the other six. (Compare Ex. 2, Order with Ex. 3, Tabs 3-A, 3-C through 3-G.)

56. First, the identical orders issue to unrelated people on consecutive days and in consecutive weeks: July 24, July 31, August 11, August 14, twice on August 21, then August 26 — every order counsel has been able to obtain from this judge in that window, and they are the same order. Two of them, Tab 3-A and Tab 3-G, were signed on the very same day, August 21, 2026, for two unrelated respondents represented by two different attorneys. They are indistinguishable.

57. Second, seven different attorneys appeared. Zhigeng Fu of Diamond Bar, Junmei Wu of Pasadena, Jiawei Peng of San Jose, Yunchao Song of City of Industry, Jeannie Joung of Los Angeles, and Yue Alan Zhang of Monterey Park each represented a different respondent on a different record; Nanduo Lu of Rosemead represented Ms. Lin. Six separate law offices in six cities, briefing six separate records. Whatever any of them argued made no difference to the text of the ruling.

58. Third, the respondents have nothing in common but the judge. They are of different nationalities — the compendium includes a Mongolian national alongside Chinese nationals — their A-numbers issue from different series, and they came before the court on separate records at different stages. Ms. Lin is a 29-year-old USC-educated finance professional with no children, an employer-sponsor who is her firm's Chief Operating Officer, and a work permit valid through 2030. Nothing in any of the seven orders distinguishes one respondent from another, because nothing in any of them describes a respondent at all.

59. Fourth, and most tellingly, the assurance of individualization is itself a template. Tab 3-B, entered June 12, 2026 by the same judge for a respondent represented by the same attorney who later appeared in Tab 3-A, contains no such recitation. It denies bond in a single, differently worded line — "Flight risk for which no amount of bond and alternatives for detention is sufficient to mitigate" — with no claim that an individualized hearing occurred, no reference to the DAR, and no reference to 8 C.F.R. § 1003.19(f). The "individualized … hearing" paragraph appears in none of this judge's orders in the compendium before July 24, 2026 and in every one after, in identical form. A sentence that materializes on a form and thereafter recurs verbatim is not a finding by an adjudicator. It is boilerplate, and this Court need not accept it as anything else.

60. Fifth, this Court has seen one of these orders before. The order at Tab 3-D was filed as an exhibit in another habeas petition in this District. See *Tu v. Warden*, No. 5:26-cv-04343, Dkt. No. 7-2 (C.D. Cal. filed Aug. 10, 2026). The practice documented here is not confined to Ms. Lin's case, and it is not new to this Court.

61. Not similar reasoning. Identical text, across records with nothing in common. That a pre-printed form recites the word "individualized" does not make a hearing individualized — and here the record proves it was not, because the Government's own admitted exhibit says the opposite of what the order found.

## VIII. LEGAL ARGUMENT

**A. Petitioner Holds a Protected Liberty Interest, and Due Process Required Notice and a Hearing Before Respondents Seized Her.**

62. "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690; *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). That protection runs to "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; accord *Mathews v. Diaz*, 426 U.S. 67, 77 (1976); *Demore*, 538 U.S. at 523.

63. The Government's discretion to detain noncitizens "is always constrained by the requirements of due process." *Hernandez*, 872 F.3d at 981. Because Petitioner is a § 1226(a) detainee and not subject to mandatory detention, no statute compelled her seizure. Respondents' decision to take her into custody was a pure exercise of executive discretion over a person living at liberty in the community and working under a federal work permit — and is therefore subject to the full requirements of the Due Process Clause, including its requirement of pre-deprivation process.

64. A noncitizen living at liberty in the United States has a due-process interest in "an opportunity or a hearing *before* [s]he is deprived of any significant protected interest." *R.A.N.O. v. Wofford*, 2026 WL 40507, at *7 (E.D. Cal. Jan. 6, 2026) (emphasis in original); see also* E-M v. Hermosillo*, 2026 WL 883776, at* 6 (D. Or. Mar. 31, 2026); *Singh v. Noem*, 2026 WL 766228, at *9 (D.N.M. Mar. 18, 2026). The rule that process must precede deprivation is the constitutional default.* Logan*, 455 U.S. at 436. Post-deprivation process suffices only in "extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event."* United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993) (citation omitted). This is the opposite of such a case. Respondents did not stumble upon Petitioner; they ran an operation to find her, on a date and at a terminal of their own choosing.*

65. Nor did any ICE administrative warrant supply the missing process. The Form I-213 records the disposition as "Warrant of Arrest/Notice to Appear" — a warrant ICE wrote for itself. (Ex. 5 at 1.) "A neutral judge is one of the most basic due process protections." *Castro-Cortez v. INS*,

239 F.3d 1037, 1049 (9th Cir. 2001). A warrant the enforcing agency writes for itself is the opposite of neutral review. See *Diouf v. Napolitano*, 634 F.3d 1081, 1091–92 (9th Cir. 2011).

**B. Every Mathews Factor Confirms That Pre-Deprivation Process Was Required.**

66. What process is due is determined by *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976): the private interest affected; the risk of erroneous deprivation and the value of additional safeguards; and the Government's interest. See generally *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022). Each factor favors Petitioner.

67. First, the private interest is at its maximum. Petitioner's interest in freedom from physical detention is "the most elemental of liberty interests." *Hamdi*, 542 U.S. at 529. Liberty permits her to live in her home, to work in the profession she trained for, to prosecute the asylum claim that has been pending for four years, and to "form the other enduring attachments of normal life." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). Her detention is also destroying a career she spent years building: it "interrupts her established professional career," "causes significant hardship to her employer," "disrupts the adjudication of her pending asylum application," and "jeopardizes her ability to continue contributing to her workplace." (Ex. 2, Mot. at 4, 10.)

68. Second, the risk of erroneous deprivation from a unilateral ICE arrest reviewed by no one is high, and pre-deprivation safeguards "would greatly reduce the risk" of an erroneous deprivation of liberty. *Singh v. Noem*, 2026 WL 766228, at 9. *This case supplies unusually direct proof. Had Petitioner been heard before her seizure, she could have presented her lawful admission, her USC degree, her pending asylum application, her work permit, her employer's support, and her spotless record. The arresting officer reached the correct conclusion on the very evidence he had — "LIN does not appear to be a flight risk" — and Petitioner was detained anyway. A process in which the decisionmaker's own finding does not control the outcome is precisely the process that produces error.*

69. Third, the Government's interest in seizing Petitioner without any prior process is low. Civil immigration detention is not punitive; the only legitimate interests are preventing danger and securing appearance. *Zadvydas*, 533 U.S. at 690. Respondents' own record disclaims both. "[A]lthough the government has a strong interest in enforcing the immigration laws, the government's interest in detaining petitioner without a hearing is 'low.'" *R.A.N.O.*, 2026 WL 40507,

at *7 (quoting* Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019)). The burden of providing notice and a hearing is minimal — the Government runs custody hearings every day — while "[t]he costs to the public of immigration detention are 'staggering.'"* Hernandez*, 872 F.3d at 996. This is not the "special instance … where post-deprivation process is all that is due."* Zinermon v. Burch*, 494 U.S. 113, 139 (1990).*

**C. The After-the-Fact Bond Hearing Did Not and Could Not Cure the Violation, and This Court Should Not Order Another One.**

70. Respondents will answer that Petitioner already received a bond hearing. That is no answer. "[A] post-detention bond hearing is insufficient to cure a violation of procedural due process arising from detention without a pre-deprivation hearing." *Zaitsev*, 2026 WL 1047942, at *7; accord* Zepeda Perez*, 2026 WL 980492, at* 5 ("Post-deprivation custody hearings do not remedy the lack of constitutionally required pre-deprivation process."); *E.G.M. v. Scott*, 2026 WL 914803, at *6 (W.D. Wash. Apr. 3, 2026) ("any post-deprivation remedies … do not cure the constitutional violation"). Such a hearing "cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."* E.A.T.-B.*, 795 F. Supp. 3d at 1324.*

71. The Central District has confronted this precise argument and rejected it on facts stronger for the Government than these. In *Mikayelyan*, the petitioner had already received a post-deprivation bond hearing at which the Immigration Judge denied bond — and the court nonetheless granted the writ and ordered release, holding that "the appropriate remedy for the deprivation is release from custody." No. 5:26-cv-01035-SSS-DFM, Dkt. No. 19, at 3–4; accord *Singh v. Noem*, 2026 WL 766228, at *10 (immediate release warranted even though a post-deprivation bond hearing had been provided, because it failed to cure the injury of the unlawful detention itself).*

72. The reason is structural: the injury is the detention. Even if Petitioner were given a flawless hearing tomorrow and released, she "will have already suffered the harm … [of her] potentially erroneous detention." *Domingo v. Kaiser*, 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025). Ordering a do-over hearing would ratify the very sequence the Constitution forbids — seize first, justify later — and would leave Respondents free to repeat it tomorrow against the next work-authorized asylum applicant whose flight itinerary appears in a DHS database. Petitioner therefore does not seek, and does not consent to, an order directing a further bond hearing in lieu of release.*

73. The record here supplies an additional, concrete reason not to send Ms. Lin back for more process: this Court can now see exactly what that process produces. Over five weeks it produced the same twenty-three words seven times. Ordering another hearing before the same court would order an eighth copy — and the same judge is scheduled to hear her again tomorrow morning. (Ex. 1.)

**D. Independently, the Hearing Petitioner Received Was Not Individualized and Did Not Satisfy Due Process.**

74. The Fifth Amendment requires that "the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Jackson v. Indiana*, 406 U.S. 715, 738 (1972). That relation cannot be assessed in the abstract; it requires an assessment of this person's circumstances. Civil detention is an "extraordinary" deprivation of liberty, *United States v. Salerno*, 481 U.S. 739, 750 (1987), and "[a]ny detention incidental to removal must bear[] a reasonable relation to its purpose," *Hernandez*, 872 F.3d at 990.

**1. A finding that does not vary when the facts vary is not a finding about the facts.**

75. As set out above and documented in Exhibit 3, the same Immigration Judge issued the same one-sentence flight-risk finding — verbatim — to six respondents represented by six different attorneys, on six different records, over five weeks, and then issued it a seventh time to Ms. Lin. Two of the six were signed on a single day, August 21, 2026, for unrelated respondents. The recitation that the hearing was "individualized" is itself pre-printed language that appears in none of this judge's orders in the compendium before July 24, 2026 and in every one after.

76. The Ninth Circuit has told courts what to do with this. A reviewing court takes the agency at its word only "in the absence of any red flags"; "when there is an indication that something is amiss," it should not credit the agency's "use of a 'catchall phrase' to the contrary." *Martinez*, 124 F.4th at 785. Here the catchall is not even a phrase the judge chose; it is a paragraph pre-printed on the form. A generalized assurance that everything was considered cannot substitute for engagement with probative evidence the decision never acknowledges. *Id.* A verbatim match across six unrelated records is not merely a red flag; it is proof that no such engagement occurred.

77. And this case adds something the others did not have. The single most probative document on the only issue the order decides — DHS's own Form I-213, stating that Petitioner

"does not appear to be a flight risk" — is not mentioned, distinguished, or acknowledged anywhere in the order. That document was not buried. The Government filed it with the Immigration Court two days before the hearing and it was admitted as the Government's own Exhibit 2. (Ex. 5; Ex. 2, Order.) An adjudicator who had engaged with this record would have had to say something about it. This one said the same twenty-three words he had said to six other people.

78. District courts have granted relief on weaker showings. In *Sales v. Johnson*, the court granted habeas where "the IJ's flight risk finding was not supported by clear and convincing evidence when the government did not present any evidence or even argue the flight risk factor." 323 F. Supp. 3d 1131, 1141 (N.D. Cal. 2018). The record here is worse than an absence of Government evidence: the Government's evidence affirmatively supports release.

**2. The Government was not required to bear — and did not bear — the burden of proof.**

79. Under 8 C.F.R. § 1236.1(c)(8), the default rule places the burden on the noncitizen. But 8 U.S.C. § 1226(a) is silent on who must carry what burden, and this Court "must exercise [its] independent judgment in deciding whether an agency has acted within its statutory authority." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024). The allocation is therefore a constitutional question governed by *Mathews*, and all three factors favor placing the burden on the Government by clear and convincing evidence.

80. The private interest is "one of the most elemental of liberty interests," *Hamdi*, 542 U.S. at 529; accord *Addington v. Texas*, 441 U.S. 418, 425 (1979). The risk of erroneous deprivation is acute: detained noncitizens cannot readily gather evidence or reach witnesses, *Diouf*, 634 F.3d at 1091–92, and they must prove a negative — that they will not flee — which is "never easy as a matter of proof," *Elkins v. United States*, 364 U.S. 206, 218 (1960). And the Government "has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez*, 872 F.3d at 993. The Ninth Circuit has required clear and convincing proof from the Government in analogous contexts. *Singh v. Holder*, 638 F.3d at 1203–04; see *Cooper v. Oklahoma*, 517 U.S. 348, 363 (1996).

81. Had the burden been placed where the Constitution requires, this case would have ended at the hearing. Respondents would have had to prove by clear and convincing evidence that

Petitioner is a flight risk, using a record whose central document — their own admitted exhibit — says she is not.

**3. The order announces a conclusion about alternatives to detention without performing any analysis, and never addresses ability to pay.**

82. Due process requires an Immigration Judge to consider a detainee's financial circumstances and the availability of alternative conditions of release before setting or denying bond. *Hernandez*, 872 F.3d at 993–94. "When the [G]overnment determines what bond to set without considering a detainee's financial circumstances, or the availability of alternative conditions of release, there is a significant risk that the individual will be needlessly deprived of the fundamental right to liberty." *Id.* at 993.

83. The August 26 order does not omit alternatives to detention; it announces a conclusion about them — that no bond would suffice "even if coupled with alternatives to detention" — while identifying not one alternative and explaining nothing about why any would fail. A conclusion recited is not an analysis performed. The order never mentions electronic monitoring, reporting requirements, ICE's Alternatives to Detention program, or supervision by Mr. Maghakian, who swore under penalty of perjury that he is willing to continue supporting Ms. Lin throughout these proceedings and is confident that she will comply with every condition imposed. (Ex. 2, Mot. at 3; Decl. of Haig Mark Maghakian ¶¶ 10–12, filed with Ex. 2, Mot.)

84. The order likewise says nothing about ability to pay. It identifies no figure Petitioner could not have met, because it identifies no figure at all — notwithstanding documented earnings and an employer prepared to support her. Denying bond outright without considering financial circumstances or alternatives is independently unconstitutional. *Hernandez*, 872 F.3d at 993–94.

**4. The flight-risk finding is contradicted by the Government's own evidence and is entitled to no deference.**

85. Federal habeas courts do not defer to a bond determination that rests on no individualized findings and no clear and convincing evidence. *Sales*, 323 F. Supp. 3d at 1141; *Martinez*, 124 F.4th at 785. The Board's flight-risk factors include fixed address, length of residence, family ties, employment history, manner of entry, record of compliance with immigration obligations, and criminal record. *Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006); see *Matter of*

*Urena*, 25 I&N Dec. 140, 141 (BIA 2009). Every factor favors release, and every factor was documented in the record before the Immigration Judge.

86. Fixed address. A residence at 700 West 9th Street, Apartment 2909, Los Angeles, California — the address at which USCIS has corresponded with her since 2022, and to which she will return if released. She also holds a United States driver's license that DHS recorded on its own arrest form. Length of residence and manner of entry. Inspected and lawfully admitted on a valid F-1 student visa in August 2021 and again in August 2022; five years of continuous, open residence. Employment history. Full-time employment at an investment management firm since November 2025, under a USCIS-issued work permit, documented by a verification letter, a Form W-2, and a pay stub. Community ties. A USC graduate degree, professional certifications, and a United States citizen employer-sponsor who is his firm's Chief Operating Officer and who has committed under oath to support her and to re-employ her. Compliance with immigration obligations. A Form I-589 pending since April 2022, prosecuted continuously, with no failure to appear before any court or agency, ever — and a master hearing she is prepared to attend tomorrow. Criminal record. None; DHS's own TECS and NCIC checks came back negative and the "Criminal Record" field on its Form I-213 is blank.

87. Then there is the fact that ends the inquiry. The Government's own arresting officer, on the day of the arrest, wrote that Petitioner "does not appear to be a flight risk." (Ex. 5 at 3.) On a record in which the only party bearing any burden has affirmatively documented the opposite of what the order found, a finding that Petitioner presents a flight risk that no amount of bond and no alternative to detention could mitigate — the most extreme finding available on the bond spectrum — is not merely unsupported. It is contradicted by the moving party's own proof.

88. A final point of common sense. A person planning to abscond does not fly under her own name on a business trip for her employer, return to the city where she lives and works, and identify herself truthfully to federal officers who ask her name. Ms. Lin did all three; the Government's own narrative records that when officers "asked the subject her name," she "said LIN, Xin." (Ex. 5 at 2.) The Government has never explained where it believes a woman with a five-year work permit, a professional career, a graduate degree from USC, and an asylum application she has pursued for four years would go.

**E. The Only Adequate Remedy Is Immediate Release.**

89. "[T]he traditional function of the writ is to secure release from illegal custody." *Preiser*, 411 U.S. at 484. Where the Government has detained a person without the pre-deprivation process the Constitution requires, "the appropriate remedy for the deprivation is release from custody." *Mikayelyan*, Dkt. No. 19, at 4. Courts in this District have ordered release on comparable facts, recognizing that the deprivation of physical liberty is itself irreparable harm. See, e.g., *Jin Liu v. Noem*, No. 5:26-cv-00325-CAS-DTB (C.D. Cal. Jan. 30, 2026); *Tur-Sarksyan v. Bondi*, No. EDCV 26-00696-MWF (C.D. Cal. Feb. 23, 2026).

90. An order directing yet another custody redetermination would not restore what was taken and would not prevent its repetition. The remedy that matches the injury is the writ.

## IX. CLAIMS FOR RELIEF

### COUNT ONE

### Violation of Procedural Due Process — Detention Without Pre-Deprivation Notice and Hearing

### (U.S. Const. amend. V)

91. Petitioner re-alleges and incorporates by reference each preceding paragraph.

92. Petitioner held a constitutionally protected liberty interest in remaining free from physical confinement. Respondents deprived her of that interest on July 29, 2026 without notice, without a hearing, and without review by any neutral decision-maker.

93. No exigency, emergency, or impracticability excused pre-deprivation process. Respondents identified Petitioner in their own databases before she traveled, learned her flight itinerary in advance, and conducted a planned plainclothes "targeted field operation" at a chosen airport terminal, staffed by four officers, to locate and seize her. Notice and a hearing before any arrest were entirely practicable. The violation was complete upon her detention and was not cured by the later bond hearing. The Court should grant the writ and order Petitioner's immediate release.

### COUNT TWO

### Violation of Procedural Due Process — A Non-Individualized Bond Determination

### (U.S. Const. amend. V)

94. Petitioner re-alleges and incorporates by reference each preceding paragraph.

95. Assuming arguendo that a post-deprivation custody hearing could cure the violation alleged in Count One, the hearing Petitioner received was not constitutionally adequate. The August 26, 2026 order makes no factual findings, identifies no evidence, states no bond amount, names no alternative to detention, says nothing about ability to pay, and never acknowledges DHS's own written statement — in the Government's own admitted exhibit — that Petitioner "does not appear to be a flight risk." Its operative sentence is identical, word for word, to orders the same Immigration Judge issued to six unrelated respondents represented by six other attorneys, and its recitation that the hearing was "individualized" is pre-printed boilerplate that appears in none of that judge's orders in the compendium before July 24, 2026.

96. Petitioner was further denied due process because the Government was not required to bear, and did not bear, the burden of justifying her continued detention by clear and convincing evidence, and because the adjudicator did not function as a neutral decision-maker as to her individual circumstances. "A fair trial in a fair tribunal is a basic requirement of due process." *In re Murchison*, 349 U.S. 133, 136 (1955); accord *Goldberg v. Kelly*, 397 U.S. 254, 271 (1970); *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980). The inquiry is objective. *Withrow v. Larkin*, 421 U.S. 35, 47 (1975); *Tumey v. Ohio*, 273 U.S. 510, 532 (1927); *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 883–84 (2009). The Court should grant the writ and order Petitioner's immediate release rather than order a further hearing.

**COUNT THREE**

**Violation of Substantive Due Process — Detention Untethered to Any Permissible Purpose**

**(U.S. Const. amend. V)**

97. Petitioner re-alleges and incorporates by reference each preceding paragraph.

98. Civil immigration detention may serve only two permissible purposes: preventing danger to the community and securing the noncitizen's appearance at removal proceedings. *Zadvydas*, 533 U.S. at 690. It may not be punitive.

99. Petitioner has no criminal history — DHS's own TECS and NCIC checks returned negative results on the day of her arrest — and the Government's own arrest record states that she is neither a flight risk nor a threat to public safety. She entered lawfully, earned a graduate degree at USC, holds federal employment authorization through April 2030, works full-time under it,

maintains a fixed residence in Los Angeles, has an employer prepared to supervise and re-employ her, has never missed an immigration appointment, and has an asylum application she has prosecuted for four years. Her detention is not reasonably related to any legitimate purpose and violates substantive due process. The Court should grant the writ, order her immediate release, and enjoin Respondents from re-detaining her absent constitutionally adequate pre-deprivation process.

## X. PRAYER FOR RELIEF

WHEREFORE, Petitioner Xin Lin respectfully requests that this Court:

(1) Assume jurisdiction over this matter;

(2) Declare that Petitioner's detention — effected on July 29, 2026 without notice and without a hearing before a neutral adjudicator prior to the deprivation of her liberty — is unlawful and violates the Due Process Clause of the Fifth Amendment;

(3) Declare that the August 26, 2026 post-deprivation bond hearing did not and cannot cure that violation, and that it independently failed to satisfy due process because it was not individualized, did not place the burden on the Government, and did not consider ability to pay or alternatives to detention;

(4) Issue a Writ of Habeas Corpus and ORDER Respondents to release Petitioner from custody IMMEDIATELY, on reasonable conditions of supervision, restoring the conditions of liberty that existed before her arrest and without imposing any new restraint — including electronic monitoring — absent a subsequent, constitutionally adequate pre-deprivation determination that such a restraint is necessary;

(5) Order Respondents to preserve and produce the Body Worn Camera footage of Petitioner's July 29, 2026 arrest referenced in the Form I-213, and to lodge with this Court the Digital Audio Recording, and any transcript, of the August 26, 2026 bond hearing in *In re Lin, Xin*, A# 240-788-800;

(6) Order Respondents to file a status report certifying compliance with the order of release within three (3) days of its entry;

(7) Enjoin Respondents from re-detaining Petitioner absent notice and a constitutionally adequate hearing before a neutral adjudicator held prior to any such re-detention;

(8) Enjoin Respondents from transferring Petitioner outside the Central District of California pending resolution of this Petition;

(9) Award Petitioner reasonable costs and attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412; and

(10) Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: August 27, 2026

By counsel,

/s/ Hovhannes Bayburtski

Hovhannes Bayburtski, Esq.

Attorney for Petitioner

**VERIFICATION PURSUANT TO 28 U.S.C. § 2242**

I am submitting this verification on behalf of the Petitioner because I am Petitioner's attorney. I have discussed with the Petitioner the events described in the Petition. Based on those discussions, I hereby verify that the factual statements made in the attached Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Executed on August 27, 2026, in Studio City, CA.

/s/ Hovhannes Bayburtski

Hovhannes Bayburtski, Esq.

Attorney for Petitioner