**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| XIN LIN,<br><br>Petitioner,<br><br>v.<br><br>JAMES JANECHA et al.,<br><br>Respondents. | Case No. 5:26-cv-04915-DFM<br><br>ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS |

## I. INTRODUCTION

On August 27, 2026, Petitioner Xin Lin, an immigration detainee at the Adelanto ICE Processing Center represented by counsel, filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. See Dkt. 1 (“Petition”). The Petition alleges that Respondents deprived Petitioner of liberty without notice and a hearing before a neutral decision-maker before her arrest, that the bond hearing she later received was not constitutionally adequate, and that her continued detention has no permissible civil purpose. See id. at 24-26. Petitioner seeks immediate release, several forms of declaratory and injunctive relief, an order preserving and producing evidence, and fees under the Equal Access to Justice Act. See id. at 26-27. On September 4, 2026, Respondents filed an Answer. See Dkt. 7 (“Answer”). Petitioner filed a Reply the same day. See Dkt. 8 (“Reply”).

For the reasons set forth below, the Petition is **GRANTED** in part.

## II. BACKGROUND

### A. Admission

Petitioner is a native and citizen of the People's Republic of China. See Answer, Ex. A ("Form I-213") at 1. On August 11, 2022, U.S. Customs and Border Protection admitted her at Los Angeles International Airport as an F-1 student with authorization to remain for the duration of her status. See id. at 2-3. Her Student and Exchange Visitor Information System record was completed on July 12, 2023, and she did not depart. See id. at 3. On April 29, 2022, she filed a Form I-589 application for asylum and withholding of removal, which remains pending. See id.; Petition ¶ 28.

Petitioner alleges that she earned a master's degree in finance from the University of Southern California, holds an employment authorization document valid through April 15, 2030, has worked full time for an investment management firm since November 2025, maintains a fixed residence in Los Angeles, and has the sworn support of her employer's chief operating officer, who has committed to supervise and re-employ her. See Petition ¶¶ 27, 29-33.

### B. The July 29, 2026 Arrest

On July 29, 2026, U.S. Immigration and Customs Enforcement ("ICE") conducted a targeted field operation at Terminal 2 of Los Angeles International Airport to locate Petitioner. See Form I-213 at 2. Department of Homeland Security ("DHS") systems had identified her as a biographic match to a person who had overstayed a prior admission and who would travel from New York to Los Angeles that day. See id. Petitioner was arrested and transported her to the ICE Los Angeles Field Office. See id.

Records checks run that day returned negative results in EARM, TECS, and NCIC and positive results in CIS and IAFIS. See id. Under a heading for mitigating factors, the arresting deportation officer wrote that Petitioner "does

not appear to be a flight risk and a threat to public safety," and recorded that she has a pending Form I-589 and no gang ties. See id. at 3. The same section states that she expresses no fear of return to China and that she has no known community ties precluding appropriate law-enforcement action. See id.

The Form I-213 records that ERO Los Angeles issued Petitioner a Notice to Appear charging her as deportable under INA § 237(a)(1)(B) as a nonimmigrant overstay, and that she would remain in ICE custody pending her immigration proceedings. See id. at 2-3. The form records the disposition as "Warrant of Arrest/Notice to Appear," although no warrant appears in this record. See id. at 1.

### C. The Bond Hearing

On August 12, 2026, Petitioner moved through immigration counsel for a custody redetermination. See Petition, Ex. 2 ("Bond Motion") at 4-12. Petitioner states that the motion was admitted as the immigration court's Exhibit 1 and that DHS uploaded the Form I-213 to the immigration court on August 24, 2026—two days before the bond hearing—where it was admitted as the Government's Exhibit 2. See Petition ¶¶ 42-43, 48.

On August 26, 2026, an Immigration Judge ("IJ") denied the request. See Answer, Ex. B ("Bond Order") at 1. The stated reason reads: "Flight risk which no amount of bond, even if coupled with alternatives to detention, is sufficient to mitigate significant likelihood of absconding." Id. The order further recites that the court conducted an individualized bond and custody redetermination hearing, considered all arguments and evidence from both sides, and orally articulated its findings and reasons into the Digital Audio Recording system, which it states is available to both sides through the EOIR

Courts and Appeal System. See id.; 8 C.F.R. § 1003.19(f).[1] The order identifies the governing authority as INA § 236(a), records that DHS waived appeal and that Petitioner reserved it, and states an appeal due date of September 24, 2026. See Bond Order at 2. No recording or transcript of the hearing has been lodged.

An EOIR case-information printout dated August 27, 2026 reflects that Petitioner's removal case was then pending, that no appeal had been received, and that her next master calendar hearing was set for August 28, 2026. See Petition, Ex. 1 at 2-3. The outcome of that hearing is not in this record. The Answer states that Petitioner "appealed [the bond decision] on September 2, 2026." Answer at 3.

## III. DISCUSSION

A federal court may grant a writ of habeas corpus to a petitioner "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas jurisdiction extends to noncitizens challenging the lawfulness of their immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687-88 (2001). The parties agree, and the supplied record confirms, that Petitioner's detention is discretionary detention under 8 U.S.C. § 1226(a).

---

[1] Petitioner submitted a compendium of seven bond denial orders entered by the same IJ between June 12 and August 21, 2026, for seven other respondents represented by six other attorneys. See Petition, Ex. 3 ("Compendium") at 4, 7, 10, 13, 16, 19, 22. Six of them contain the same one-sentence reason and the same pre-printed individualized-hearing recitation that appear in Petitioner's order. See id.

## A. Exhaustion

Respondents argue that "Petitioner has not exhausted all remedies outside of this Court" and "has presented no valid arguments excusing exhaustion in this case." Answer at 3-4.

A noncitizen habeas petitioner ordinarily "must exhaust administrative remedies before raising . . . constitutional claims in a habeas petition when those claims are reviewable by the BIA on appeal." Leonardo v. Crawford, 646 F.3d 1157, 1160 (9th Cir. 2011) (citation omitted). In determining whether exhaustion is required for a constitutional question, "[t]he key is to distinguish the procedural errors, constitutional or otherwise, that are correctable by the administrative tribunal from those that lie outside the BIA's ken." Liu v. Waters, 55 F.3d 421, 426 (9th Cir. 1995). When a petitioner does not exhaust, "a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." Leonardo, 646 F.3d at 1160.

Generally, prudential exhaustion may be required when the following factors are met: "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007) (citation omitted). Courts may nonetheless waive exhaustion if the petitioner demonstrates that "administrative remedies are inadequate or not efficacious," "pursuit of administrative remedies would be a futile gesture," "irreparable injury would result," or "the administrative proceedings would be void." Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004) (citations omitted).

Here, the prudential exhaustion requirement warrants dismissal without prejudice of Petitioner's challenge to the constitutional adequacy of her bond hearing. See Petition ¶¶ 9-96. Agency expertise and the availability of the administrative record favor requiring exhaustion as to this claim. On appeal, the BIA may review the IJ's legal, discretionary, and judgment determinations de novo, may review findings of fact for clear error, and may remand if further factfinding is needed. See 8 C.F.R. § 1003.1(d)(3)(i)-(ii). Excusing exhaustion where Petitioner's appeal was only recently filed would encourage bypass of the administrative scheme. Additionally, administrative review could eliminate the need for judicial review of this claim. If the BIA concludes that the hearing was deficient, it may sustain the appeal or remand for a new bond hearing.

The Court declines, however, to dismiss on exhaustion grounds Petitioner's claim that she was detained without pre-deprivation notice and a hearing in violation of due process. Even if the Court assumed that the Puga factors support requiring exhaustion as to this claim, the Court would waive exhaustion on futility grounds. Petitioner claims that the original constitutional transgression occurred when ICE detained her without notice or a pre-deprivation hearing. A post-deprivation bond hearing would not address the propriety of Petitioner's claim that she was not afforded constitutionally adequate procedural safeguards pre-deprivation. See Zhao v. Janecha, No. 26-5025, 2026 WL 2666865, at *3 (C.D. Cal. Sept. 9, 2026) ("The present Petition claims a deprivation of constitutional due process, a claim not within the jurisdiction of the immigration judge or the Board of Immigration Appeals."); Yu v. Giles, No. 26-4692, 2026 WL 2455945, at *3 (C.D. Cal. Aug. 21, 2026) (same); R.N.G. v. Semaia, --- F. Supp. 3d. ---, 2026 WL 2089544, at *3 (C.D. Cal. July 14, 2026) (same).

**B. Petitioner's Due Process Rights Were Violated**

Petitioner asserts that she holds a protected liberty interest, and that due process required notice and a hearing before Respondents arrested her. See Petition ¶¶ 62-73. The Court agrees.

The Fifth Amendment Due Process Clause protects "all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent," and "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" the Due Process Clause protects. Zadvydas, 533 U.S. at 690, 693.

In Morrissey v. Brewer, the Supreme Court recognized that the decision to release a person from custody creates "at least an implicit promise that parole will be revoked only if [s/]he fails to live up to the parole conditions," generating a liberty interest that "is valuable and must be seen as within the protection of" due process. 408 U.S. 471, 482 (1972). District courts in this circuit have often found that this principle extends to noncitizens who have overstayed their visa. See Orozco-Salazar v. Warden, No. 26-4555, 2026 WL 2497334, at *3 (C.D. Cal. Aug. 25, 2026) (collecting cases); Tello Vazquez v. Mullin, No. 26-2039, 2026 WL 1911507, at *2 (W.D. Wash. July 2, 2026) ("The Government could have detained Petitioner at any time after the expiration of his visa in 2021 but did not do so until years later, after Petitioner developed significant ties to the United States. Petitioner's interest in maintaining his liberty is therefore strong, in the absence of evidence that he is a flight risk or a danger to the community.").

To determine what procedures are constitutionally required to protect a liberty interest, courts apply the three-part test established in Mathews v. Eldridge, 424 U.S. 319, 335 (1976): (1) the private interest affected by the official action; (2) the risk of erroneous deprivation through the procedures

used and the probable value of additional or substitute procedural safeguards; and (3) the Government's interest, including the fiscal and administrative burdens of additional procedural requirements. The Ninth Circuit has observed that Mathews is "a flexible test that can and must account for the heightened governmental interest in the immigration detention context." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (citations omitted).

Starting with the first Mathews factor, Petitioner's private interest in freedom from detention is substantial. However, Ninth Circuit precedent requires the Court to also consider "the process [Petitioner] received during this time" and "the further process that was available to [her]." Id. at 1208. It is undisputed that Petitioner did not receive a pre-deprivation hearing. However, Petitioner has since received a post-deprivation custody redetermination hearing before an IJ, albeit one she staunchly contends was constitutionally inadequate. On this record, the first Mathews factor weighs in Petitioner's favor, but the Court will not "overstate the strength of [Petitioner's] showing" where she received a post-deprivation bond hearing and where further process remains available to her. Id. at 1207-08.

Turning to the second Mathews factor, the risk of erroneous deprivation, the record indicates that Respondents took Petitioner into immigration custody without pre-deprivation notice or a pre-deprivation hearing. Although an IJ subsequently found that Petitioner presents a risk of flight, see Bond Order, Petitioner contests that denial, including on the grounds that it does not represent one adjudicator's isolated error, but is a larger pattern, see Compendium. Some district courts have expressed concerns about more systemic-level issues affecting IJs and custody redeterminations, noting "the stream of cases returning to habeas courts in which [IJs] have ordered detentions without conducting the reasoned and individualized assessments that due process requires." Claros v. Albarran, No. 25-9473, 2026 WL

2364813, at *8 (N.D. Cal. Aug. 14, 2026) (also expressing concerns about the mass firings of IJs and the apparent renaming of IJs as "deportation judges," and ultimately concluding that while the IJ abused his discretion regarding the particular decision at issue, the petitioner had not presented evidence that the IJ acted with systemic bias). Without expressing a view on the merits of this argument, the Court finds that the second Mathews factor favors neither party.

The third Mathews factor requires the Court to consider the Government's interest, and the Court is mindful that in the immigration detention context, it "must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." Rodriguez Diaz, 53 F.4th at 1208 (internal quotation marks and citations omitted). "This is especially true when it comes to determining whether removable aliens must be released on bond during the pendency of removal proceedings." Id. However, while the Government has a "significant" interest in enforcing its immigration laws, id. at 1209, that interest is diminished where, as here, Petitioner has a pending asylum application, lived in the community for nearly four years, received employment authorization, and has no criminal record.

The effort and cost required to provide Petitioner with procedural safeguards before detention—rather than simply detaining her without a hearing—is minimal. See E.A.T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) ("The Court finds that the Government's interest in re-detaining non-citizens previously released without a hearing is low: although it would have required the expenditure of finite resources (money and time) to provide [p]etitioner notice and hearing on [alternatives to detention] violations before arresting and re-detaining him, those costs are far outweighed by the risk of erroneous deprivation of the liberty interest at issue"). Accordingly, the third Mathews factor weighs somewhat in Petitioner's favor.

On balance, the Mathews factors tilt in Petitioner's favor. Respondents' detention of Petitioner without a pre-deprivation hearing violated her procedural due process rights.

**C. Remedy**

Having concluded that Respondents violated Petitioner's procedural due process rights, the Court turns to the appropriate remedy. After applying the Mathews test, the Supreme Court "usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty or property." Zinermon v. Burch, 494 U.S. 113, 127 (1990) (citations omitted). Certainly, there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate. See id. at 128. However, absent evidence of urgent concerns, a pre-deprivation hearing is required to satisfy due process. See Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1036 (C.D. Cal. 2025).

Here, nothing in the record suggests such urgency. ICE agents waited at Los Angeles International airport for Petitioner to deplane from a domestic flight, apparently having learned that she would be traveling from the DHS. See Petition, Ex. 5. Petitioner has no criminal record, no failure to appear before any court or agency, and has lived in the United States for the past four years, with an asylum application pending for over four years and years of work authorization past and remaining. See id. ¶¶ 1, 26-31, 34. The Court finds that Petitioner's detention without a pre-deprivation hearing violated her due process rights and rendered her detention unlawful. When pre-deprivation process is both feasible and required, a later post-deprivation hearing does not cure the constitutional defect. See Wamsley, 795 F. Supp. 3d at 1324.

To the extent Respondents argue that Petitioner is entitled only to a post-deprivation bond hearing, which she has since received, this argument "misapprehend[s] the purpose of a pre-detention hearing: if Petitioner is

detained, [s/]he will already have suffered the injury [s/]he is now seeking to avoid." Jorge M.F. v. Jennings, 534 F. Supp. 3d 1050, 1055 (N.D. Cal. 2021); see also Wamsley, 795 F. Supp. 3d at 1324; Yao v. Janecka, No. 26-4735, 2026 WL 2666861, at *6 (C.D. Cal. Sept. 10, 2026) (ordering a noncitizen released where she was admitted to the United States on a nonimmigrant visa in 2024, timely applied for asylum, obtained work authorization, and was detained in July 2026 at Los Angeles International Airport upon arrival from a domestic flight without a judicial warrant, prior notice, or a hearing; collecting cases finding that a post-detention bond hearing does not rectify the harm of a due process violation because the petitioner will have already suffered the potentially erroneous detention). On this record, release is the appropriate remedy to place Petitioner in the position she would have enjoyed absent the due process violation. See Yao, 2026 WL 2666861, at *6 (ordering the same where the petitioner had received a post-deprivation custody redetermination under 8 C.F.R. § 1236).

The Court's order is limited to the procedural due process violation that has occurred. The Court declines to order Petitioner's additionally requested relief of a permanent injunction prohibiting Respondents from re-detaining her "absent notice and a constitutionally adequate hearing before a neutral adjudicator held prior to any such re-detention." Petition at 27. The Court takes no position on whether, or under what circumstances, Respondents may lawfully seek to re-detain Petitioner in the future. That question is not squarely presented on this record and would depend on facts and circumstances not currently before the Court. This order addresses only the lawfulness of Petitioner's current detention, which began on July 29, 2026, and which the Court concludes violates the Fifth Amendment. Nothing in this order shall be construed as limiting Respondents' ability to lawfully re-detain Petitioner in

the future in compliance with all applicable authorities and upon affording Petitioner all process she is due.

## IV. ORDER

For the foregoing reasons, IT IS ORDERED that:

1. The Petition (Dkt. 1) is **GRANTED** in part.

2. Respondents shall immediately release Petitioner Xin Lin (A# 240-788-800) from custody. Within three (3) days, Respondents shall file a status report confirming compliance.

3. Any application for fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, shall be filed in accordance with that statute.

4. Petitioner's remaining requests are **DENIED**.

IT IS FURTHER ORDERED that Judgment be entered accordingly.

Date: September 16, 2026

DOUGLAS F. McCORMICK
United States Magistrate Judge